## Beverly Building Corporation v. Board of Adjustment

*Robert L. Trescher* and *S. Jonathan Emerson,* for appellant.

*Lewis H. Van Dusen,* for board of adjustment.

*Francis E. Shields* and *Albert W. Schiffrin,* for intervenors.

HONEYMAN, J., December 4, 1961.—Beverly Building Corporation is the owner of a tract of approximately 6.8 acres at the northwest corner of City Line Avenue and Belmont Avenue in Lower Merion Township. Beverly built a 12 story office building, known as the Barclay Building, on the tract, utilizing approximately three of the seven acres. This limited use of the land was made possible through the use of underground

garages. By reason of special exceptions granted by the board of adjustment on June 2, 1958, these garages were built under the building and under part of the front and side yards and with the area above the garage to be considered open space. At the same time, a variance was granted for a narrow strip of land zoned residential so as to extend the "CO" commercial district, in which the great majority of the land was located, to the right-of-way line of St. Asaph's Road.

When the Barclay Building was nearing completion, Beverly submitted an application for a building permit to construct another 12 story office building on this tract which would connect with the Barclay Building at the second floor level by means of a bridge 66 feet wide by 100 feet long containing corridors and office space. Beverly requested special exceptions under section 1600 of the Lower Merion Zoning Ordinance, similar to those granted for the Barclay Building, to permit the construction of an underground garage extending under the front yards and to treat the area above the underground garage as open space. The board of adjustment refused to grant the special exception and sustained the refusal of the building permit by the director of building regulations. Beverly appealed from this decision. Beverly requested that additional testimony be taken and two additional hearings were held before the board of adjustment, which again refused the application. After the additional testimony was produced, Beverly sought a writ of mandamus to compel the board to issue a decision favorable to Beverly in accordance with the Act of June 24, 1931, P. L. 1206, sec. 3107, as most recently amended by the Act of August 25, 1959, P. L. 760, sec. 1, 53 PS §58107 (f) which provides:

"The board of adjustment shall . . . decide the . . . [appeal] within forty-five days after the hearing. . . . If the board of adjustment does not make a decision

within forty-five days after the hearing . . . it shall be deemed that such board has decided in favor of the person . . . who is seeking relief. . . ."

Beverly's contention was that the first decision of the board of adjustment was not made within the required 45 days and that the decision should be deemed to be in their favor and the board so ordered to note in its records. This court dismissed the complaint on the grounds that Beverly had an adequate remedy at law by way of the present appeal which was then pending. Therefore, that is one of the three issues presently before the court. The other two questions are whether Beverly has a vested right to develop the unused portion of the tract, and whether the board of adjustment abused its discretion in failing to grant Beverly the special exceptions requested, and to reverse the action of the director in refusing to issue the building permit.

The first public hearing was held in this matter on October 22, 1959. Immediately following this public meeting, the members of the board discussed the merits of the appeal but reached no formal conclusion. Thereafter the secretary of the board of adjustment prepared a draft of proposed findings of fact and the solicitor of the board prepared matters relating to points of law. These drafts were typed and submitted to the members of the board who approved the same. This was done only after receipt of briefs of counsel, including a final brief received on November 20, 1959. On December 4, 1959, two days before the expiration of the 45 day period fixed by the Act of Assembly, the board, through its secretary, issued a written opinion refusing the requested special exceptions and sustaining the action of the director of building regulations. Two weeks later, in its next regular public meeting, the board unanimously adopted a motion that the order dated December 4, 1959, be approved, confirmed and recorded in the minutes of the public meeting.

It is Beverly's contention that the opinion and order of December 4, 1959, was not a "decision" in accordance with the rules applicable to a board of adjustment; that no legal decision was made within the required 45 day period; and that by operation of law the board's decision is deemed to be in Beverly's favor. Specifically, Beverly contends that the board did not reach its decision at either a meeting open to the public or at an executive session of the board, that the original draft of its opinion and order were prepared by its secretary and solicitor, that the only discussions concerning this draft and the matter in question were between individual members of the board and not at an open meeting or an executive session, and that there is no minute of the board during the 45 day period reflecting their action on the appeal.

The facts, as disclosed by the evidence and as found by this court after the hearing on the mandamus action, are that a discussion of the merits of Beverly's application among all the board members took place on October 22, 1959, immediately following the first hearing. The chairman of the board of adjustment testified that the next regularly scheduled public hearing before the board was on November 24 after which the board retired to executive session at which, he stated, they probably again discussed the Beverly application. Concerning the final opinion and order handed down on December 4, the chairman stated that it was a composite of several drafts, that no one individual is the complete author of the document.

In Commonwealth ex rel. Maurer v. Burns, 365 Pa. 596 (1950), the Supreme Court reversed an appointment to the Board of Revision of Taxes of Philadelphia County, made by a majority of the judges of the courts at common pleas of that county without notice to all of such judges and without a meeting of them. A "round robin" was circulated among some of the judges, and

after being signed by 15 of the 20 judges, notice of the appointment was made. The proposed appointment was not discussed at any meeting of the board of judges, some judges had no opportunity to express their opinions and one president judge had no knowledge of the circulation of the "round robin". The Supreme Court found the lack of notice to all member judges and the failure to afford an opportunity to deliberate as a group were the defects which rendered their appointment null and void. In the instant case there was at least one and, as testified to by the chairman of the board, probably two executive sessions of the board, at which this appeal was discussed. A draft of the opinion and order was circulated and consideration given to this draft, and subsequent modifications and corrections thereto made by all members of the board.

Concerning the obligation that there is no minute of the board evidencing its decision within the 45 day period, the statute in question merely requires that the board "decide" the appeal within 45 days. There is no requirement that a public meeting be held within 45 days of the hearing and that either deliberations open to the public be held or that the decision be publicly announced. The minutes of the next regularly scheduleduled public meeting notes the action that was taken. Under these circumstances the opinion and order issued by the board on December was a decision within the meaning of the act in question, same being within the requisite 45 days. By reason of this, this court does not have to decide the question of constitutionality of the 1959 amendment containing this 45 day provision.

Beverly applied for a permit to construct the proposed building on October 1, 1959. At that time such a structure was a permitted use under the then "CO" zoning if Beverly obtained two special exceptions under §1600 (2) of the Lower Merion Zoning Ordinance so that the underground garage could be placed in the

front yard and so that the area above the underground garage could be treated as open space. On October 21, 1959, a public hearing was held by Lower Merion Township on a proposed amendment which would provide that in a "CO" district floor area would be limited to 50 per cent of lot area. This date for the public hearing on the amendment was fixed by the township commissioners on July 15, 1959. On October 22, 1959, the zoning hearing on Beverly's appeal was held before the Lower Merion Zoning Board of Adjustment. On November 18, 1959, the commissioners of Lower Merion Township passed the amendment to the zoning ordinance restricting the size of buildings by requiring that floor area could not exceed 50 per cent of lot area. On December 4, 1959, this ordinance became effective and the decision refusing Beverly's application was handed down. However, there is nothing in the record from which we could conclude that the proposed amendment was specifically directed at appellant or that there was any "race" between the promulgation of the amendment and the disposition of this application. The board denied Beverly's application on the basis that the new amendment prohibited the proposed structure and that, if the old ordinance was applicable, the board, in the exercise of its discretion, would refuse to grant the special exception to treat the area above the underground garage as open space.

"... (A)n application for a building permit may be refused when the proposed building or use will violate a zoning ordinance which is pending in Council, even though the ordinance is enacted several months after the permit was applied for ...": Colligan Zoning Case, 401 Pa. 125, 132 (1960).

Under this rule of law the proposed structure would come within the purview of the newly enacted ordinance, but Beverly contends that it has acquired a vested right to develop the unused portion of the tract under

the provisions of the ordinance before amendment. Beverly argues that the expenditure made by it under the permit authorizing the existing Barclay Building gave it a vested right to build a second building under a new permit.

A vested right to build a structure which violates a zoning ordinance can only be acquired by securing a building permit and expending substantial sums in reliance on the permit: Dunlap Appeal, 370 Pa. 31 (1952); Herskovits v. Irwin, 299 Pa. 155 (1930). The permit granted in the instant case was for the erection of the Barclay Building only. The fact that appellant chose to expend additional sums of money during the construction of the Barclay Building with the view of having certain extra facilities to service another building does not give them a vested right to build a nonconforming structure in the future. The board of adjustment took no affirmative action which could be construed to mean that approval of the proposed building and the required special exceptions would be forthcoming as a matter of course. The drawings that were presented to the board during the hearing on the application for the permit for the present Barclay Building gave no indication of any tie-in with a second building. While the plans submitted to some other township officials did reflect an intent to make such a tie-in, this information was not made known to the board.

It is undisputed that the proposed structure would violate the recent amendment to the zoning regulations for "CO" districts. The board of adjustment in its opinion stated, as an alternative ground, that if the application of Beverly was to be considered under the zoning regulations as they existed prior to the amendment, the application would still be refused by reason of increased volume of traffic and a substantial adverse impact on the traffic flow on the surrounding streets. Having decided that Beverly does not have a vested

right to proceed under the regulations before their amendment, the question of whether the board's alternative ground for refusing the application was an abuse of discretion is moot.

### Order

And now, to wit, December 4, 1961, for the above stated reasons the decision of the Zoning Board of Adjustment of Lower Merion Township is affirmed.