## Yocum, Appellant, *v.* Power.

224

Argued November 20, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*J. G. Gordon Yocum,* with him *James J. Phelan, Jr.,* and *Jay H. Eiseman,* for appellants.

*Gordon Cavanaugh,* Assistant City Solicitor, with him *David Berger,* City Solicitor, for Zoning Board of Adjustment, appellee.

*Raymond Jenkins,* for intervening appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 18, 1960:

This case involves a controversy between persons who would build a church and others who would prevent its being built. In June, 1957, the governing body of the First Lettish Baptist Church of Philadelphia purchased some land at 6933 Sherwood Road, Philadelphia for the purpose of erecting on it a new church. In pursuance of this objective, the congregation voted to sell their old church and made arrangements to worship at the Eastern Baptist Seminary at City Line and Lancaster Avenue during the interim between quitting the old church and moving into the new one. An ar-

chitect and engineer were employed and they proceeded to make preliminary sketches. The final drawings were ready on August 10, 1958. On August 13, 1958, the Church applied for and received a zoning use permit for building a new church on the purchased ground located in an area zoned "A" Residential, which permits the construction of ecclesiastical structures. In anticipation of the new church, which was to be ready for occupancy in the Spring of 1959, the pastor moved to a locality in the immediate vicinity of 6933 Sherwood Road.

In the meantime, however, forces were at work to prevent that the planned church should rise. On June 12, 1958, a bill was introduced in City Council, at the behest of neighbors in the 6933 Sherwood area, which would reclassify the involved area as "AA" Residential, a classification which excludes new churches. No notice was given to the church builders of this proposed legislation, and it was not until August 4, 1958, when a public hearing on the proposed legislation was announced, that the governing body of the First Lettish Baptist Church learned of the device to prevent the turning of a sectarian spade in their acquired land. An application was made at once for a zoning permit and, as already stated, the permit issued on August 13, 1958. The building permit followed on August 18, 1958.

One of the neighbors, Howard H. Yocum, and two others petitioned the board of adjustment to revoke the zoning permit, and thus became opponents of the permit. The Church intervened and became proponents of the permit. The Board held a public hearing to air the controversy and, on November 26, 1958, rejected the appeal of Yocum et al., thus affirming the grant of the zoning permit. Yocum and three others appealed to the Court of Common Pleas No. 4 of Philadelphia County which affirmed the decision of the zoning board

226

of adjustment. The opponents then appealed to this Court.

Howard Yocum and his associate appellants contend that the zoning board was without authority to issue a zoning permit to the Church because at the time the application was filed, City Council had before it a bill to reclassify the area. This argument is without merit. An unpassed bill in City Council, as one in the State Legislature, has no more governmental authority than a scribbled note on the back of an envelope in the pocket of a legislator.

If all business in a city or state, touched upon by pending bills, had to mark time until final action was taken on the contemplated legislation, chaos would grip City and Commonwealth. Nearly every conceivable subject in human affairs can be found mentioned in the avalanche of bills which descend upon every session of the Legislature. Nearly every type of municipal regulation conceivable can be found in the volume of bills which are introduced in city council. The overwhelming majority of bills in Legislature and Council (fortunately) do not pass. However, if the contention of the appellants here were to prevail, all officials and employees directly or remotely associated with the countless offices, activities and enterprises covered in pending bills would have to sit still until the bills affecting the involved offices, activities and enterprises were approved or rejected or until the legislature adjourned *sine die* which in recent years seems to have become a rather visionary date.

The opponents to the building permit issued in this case cannot complain that they did not have an opportunity to oppose its being granted. Instead, however, of protesting through the zoning authorities, offering reasons in opposition to the known plans of the First Lettish Baptist Church, they went into another branch of government to strike at a particular church

by seeking a ban on all new churches in the area. The First Lettish Baptist Church had launched its program for building a new church, it had bought the necessary ground, employed the required architect and engineer, purchased some of the material for the new construction, sold its old church and the new pastor had moved to the new location when the opponents sought to illegalize what had been done under existing law. As nothing can be more unjust in criminal law than an ex post facto law, so nothing is more frowned on in civil law than a procedure which has the effect of making illegal what the law has already recognized as legal. No lover of American sports would approve of changing ground rules to favor one side or the other after the game had begun.

The ordinance which the appellants seek to invoke here did not become law until November 25, 1958, which was more than three months after the building permit had been regularly issued under existing law. When the Church acquired the building permit it became vested with an interest that cannot be lightly set aside. The attempt to illegalize the permit granted the Church, by the passage of legislation directed to that very end, constitutes special legislation which the Constitution prohibits. While Church and State are separate in our form of government, the people have recognized and acknowledged the supreme sovereignty of the Deity in the affairs of life. The Preamble to the Pennsylvania Constitution declares: "We, the people of the Commonwealth of Pennsylvania, grateful to Almighty God for the blessings of civil and religious liberty, and humbly invoking His guidance, do ordain and establish this Constitution." Thus the race to get to the City Council to change the rules concerning the building of churches when a building permit had already issued under extant law to build a specific church cannot be regarded as other than a melancholy spectacle.

228

Apart, however, from constitutional observation on the subject, the specific legal problem here involved has already been passed upon, and a wholesome precedent stands as a beacon light to guide the decision in the case at hand. In *Shapiro v. Zoning Board of Adjustment*, 377 Pa. 621, Julian B. Shapiro applied to the Department of Licenses and Inspections of Philadelphia, for use registration permits for the building of a "kiddie amusement park". The permits were refused and the refusal was sustained by the zoning board of adjustment. Shapiro appealed to the court of common pleas which reversed the board and ordered issuance of the use permit. On May 25, 1953, two months after Shapiro's original application had been filed, there was introduced in City Council an amendment to the applicable zoning ordinance, designed specifically to prevent the establishment of the Shapiro amusement park. The ordinance was approved on July 23, 1953. On August 13th, the permits, which had been issued in obedience to the order of the court of common pleas, were withdrawn. Shapiro appealed to the court of common pleas which reversed the action of the zoning board on the ground that the amendatory ordinance was inapplicable and of no effect because it constituted special legislation directed at a particular individual; moreover, that Shapiro had already acquired vested rights in the validly issued permits. In addition to calling the ordinance special legislation, the Court condemned it as " 'unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it was aimed directly at this particular piece of property.' "

This Court affirmed the decision of the court of common pleas. Speaking through Mr. Justice JONES (now Chief Justice), this Court said: "The plaintiff's use permits having been applied for and issued as a matter of right under existing law and the subsequent amendatory ordinance being incapable of affecting

them, the permits stand wholly unimpaired and must be so recognized by the municipal authorities."

The appellants in this case assert that the instant appeal should be controlled by the decision in the case of *Aberman v. New Kensington,* 377 Pa. 520, but in the very *Shapiro* case, the *Aberman* case was distinguished, namely: "This case is to be distinguished from a case such as A. J. Aberman, Inc. v. New Kensington, p. 520, ante, where the building permit was not obtained in good faith but merely in anticipation of the contemplated enactment of a general zoning law and in an effort to circumvent it."

There can be no doubt about the good faith of the First Lettish Baptist Church in the case at bar. As stated by Judge GUERIN in the court below: "We have a factual situation in which intervenor, in good faith, purchased a vacant lot for the erection of a new church; said lot was situated in an area zoned for the erection of said new church; in reliance thereon it retained an architect and engineer, expended a sum approximating $11,000, including the purchase price of its newly acquired property, sold its old church property, and had its pastor take up a new residence close to its new proposed location."

Judge GUERIN said further: "It is clear that appellants did not act in good faith in seeking an amendatory bill, but were attempting to obtain special legislation aimed directly at this piece of property." We find nothing in the record which would disabuse our mind that this statement was wholly justified by the evidence.

Affirmed.